# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DARIUS A. DUCKETT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-6823** |
| **DARREL VANNOY, WARDEN** | **SECTION: "E"(5)** |

## ORDER AND REASONS

Before the Court is the Report and Recommendation issued by Magistrate Judge Michael North recommending that Darius A. Duckett's ("Petitioner") petition for federal habeas corpus relief be dismissed with prejudice.[1] Petitioner timely objected to the Magistrate Judge's Report and Recommendation.[2] For the reasons that follow, the Court adopts the Report and Recommendation as its own, and hereby **DENIES** Petitioner's application for relief.

## BACKGROUND

Petitioner is an inmate currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. On July 29, 2010, Petitioner and his co-defendant Kevin Holmes were indicted for second-degree murder and attempted second-degree murder in connection with the shooting death of 20-year-old Marvin Newman.[3] Witness testimony and ballistic evidence strongly suggested that two shooters were involved in the altercation.[4] An eyewitness identified Holmes in a photographic lineup, and provided statements indicating that she saw him shoot the victim.[5] Petitioner was later identified

---
[1] R. Doc. 18.
[2] R. Doc. 21.
[3] R. Doc. 18 at 1.
[4] Id. at 7-9.
[5] Id. at 7.

as a suspect, and during an interrogation with the Jefferson Parish police, Petitioner confessed to shooting a gun in the victim's direction, perhaps three times.[6] Petitioner later recanted his confession, explaining that his confession was a false statement made to protect his cousin, Holmes.[7] The two defendants pleaded not guilty to the charges.

At trial, the co-defendants moved to sever the trial on the grounds that their mutually antagonistic defenses—Holmes's defense was that Petitioner's confession was true, while Petitioner's defense was that it was not true—warranted severance.[8] The trial court denied the motion.[9]

On November 11, 2011, a jury found him guilty as charged.[10] His motion for a new trial was denied.[11] He was sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence on count one, and 50 years imprisonment on count two, to be served consecutively.[12]

Petitioner appealed the conviction, asserting that the trial court erred in denying his motion for severance and motion for a few trial, and in failing to instruct the jury on self-defense. Petitioner alleges that at trial, counsel for his co-defendant "prosecuted Duckett more aggressively than the State prosecutor."[13] He alleges the co-defendant's attorney was able to use the joint trial to his client's advantage by asking leading questions of Petitioner's witnesses, questioning witnesses without Petitioner having the ability to cross-examine, and using the opening and closing statements to build a case against

---

[6] R. Doc. 1-4 at 4.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.* at 2.
[11] *Id.*
[12] R. Doc. 18 at 2.
[13] R. Doc. 1-4 at 1.

2

Petitioner.[14] The state court of appeals affirmed the convictions and sentences, and the Louisiana Supreme Court denied his application for a writ of certiorari.[15]

On January 7, 2015, Petitioner filed an application for post-conviction relief with the state district court. He raised three claims. First, he asserted that the denial of motions for severance and for new trial violated due process. Second, he argued that was denied effective assistance of trial counsel, because the trial counsel failed to assert a violation of due process with regard to the motions for severance and new trial. Third, he argued that he was denied effective assistance of appellate counsel for failing to raise his due process claims on direct appeal.[16] The district court denied post-conviction relief, and his supervisory writ applications filed by his counsel were subsequently denied by the Louisiana Fifth Circuit Court of Appeals and the Louisiana Supreme Court.[17] Petitioner has exhausted his state remedies, and now seeks federal habeas corpus relief.

Petitioner's filed a petition for a writ of habeas corpus on May 23, 2016, asserting that the denials of the motion to sever and the motion for new trial violated due process.[18] Petitioner relies on *United States v. Lane*[19] and *Zafiro v. United States*[20] to argue that due process requires severance and separate trials when a joint trial is fundamentally unfair.[21] The State responded in opposition to Petitioner's habeas application on July 12, 2016.[22] Petitioner filed a reply to the State's response.[23]

---

[14] Id. at 6-14.
[15] *Id.*
[16] *Id.* at 2-3.
[17] *Id.* at 3.
[18] R. Doc. 1.
[19] 474 U.S. 438 (1986).
[20] 506 U.S. 534 (1993).
[21] R. Doc. 1-4 at 17-18.
[22] R. Doc. 14.
[23] R. Doc. 17.

3

On June 7, 2017, Magistrate Judge North issued a Report and Recommendation concluding that Petitioner's application for federal habeas corpus relief be dismissed with prejudice.[24] The Magistrate Judge determined that, although the issue has not been directly addressed by the Fifth Circuit, other circuit courts have held that *Lane* and *Zafiro* do not establish controlling federal law as set forth by the Supreme Court governing state-court determinations.[25] Thus, Petitioner's claim for failure to sever is not cognizable on federal review.[26] Even if it were cognizable, however, the Magistrate Judge found that the state court's determination that a joint trial was not fundamentally unfair or unduly prejudicial did not contravene that federal precedent.[27]

On June 28, 2017, Petitioner timely filed objections to the Report and Recommendations.[28] Petitioner made four objections. First, Petitioner objects to the Magistrate Judge's conclusion that his claim is not cognizable under federal law. Second, he objects to the Magistrate Judge's determination that, even if the Petitioner's claim were cognizable on habeas review, Petitioner received a fundamentally fair trial. Third, he objects to the Magistrate Judge's statement that "witness testimony suggest[ed] there were at least two shooters involved."[29] Lastly, Petitioner objects to the Magistrate Judge's analysis regarding the state court's jury instructions.[30]

---

[24] R. Doc. 18.
[25] *See, e.g.*, *Collins v. Runnels*, 603 F.3d 1127, 1132 (9th Cir. 2010); *Phillips v. Million*, 374 F.3d 395 (6th Cir. 2004).
[26] R. Doc. 18 at 22.
[27] *Id.* at 25. The Magistrate Judge also discussed claims of ineffective trial counsel and appellate counsel that were raised in state court proceedings, but were not raised in Petitioner's federal habeas petition. Because the Petitioner did not specifically address them in his petition, or assert the claims in his objections to the Report and Recommendation, this Court will consider them waived.
[28] R. Doc. 21.
[29] R. Doc. 21 at R. Doc. 18 at 24.
[30] R. Doc. 21 at 12.

# ANALYSIS

A. Standard of Review

In reviewing the Magistrate Judge's Report and Recommendations, the Court must conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has specifically objected.[31] As to the portions of the report that are not objected to, the Court needs only to review those portions to determine whether they are clearly erroneous or contrary to law.[32]

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court must defer to the decision of the state court on the merits of a pure question of law or a mixed question of law and fact unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[33] A state court's decision is contrary to clearly established federal law if: "(1) the state court applies a rule that contradicts the governing law announced in Supreme Court cases, or (2) the state court decides a case differently than the Supreme Court did on a set of materially indistinguishable facts."[34] AEDPA requires that a federal court "accord the state trial court substantial deference."[35]

B. Due Process

The Magistrate Judge determined that plaintiff failed to assert a claim cognizable by this Court because the Supreme Court has not clearly established a right under the Due Process Clause not to be joined for trial, even if the co-defendants presented mutually

---

[31] *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which an objection is made.").
[32] *Id.*
[33] 28 U.S.C. § 2254(d)(1).
[34] Nelson v. Quarterman, 472 F.3d 287, 292 (5th Cir. 2006) (en banc) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003).
[35] Brumfield v. Cain, 135 S. Ct. 2269 (2015).

5

antagonistic defenses.[36] Petitioner objects, arguing that *U.S. v. Lane* establishes a due process right to a severed trial if a joint trial results in serious prejudice. Specifically, Petitioner cites a footnote in *Lane* in which the Court states, "misjoinder would rise to the level of a constitutional violation . . . if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial."[37] Petitioner also looks to *Zafiro v. United States* for support.[38] In that case, the Supreme Court held that Rule 14 of the Federal Rules of Criminal Procedure does not mandate severance whenever co-defendants present conflicting defenses.[39] The Supreme Court notes, however, that if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence," severance may be required.[40]

The Court finds that no "clearly established Federal law, as determined by the Supreme Court of the United States" provides a constitutional right to separate trials for co-defendants who assert mutually antagonistic defenses. Contrary to the Petitioner's arguments, *Lane* does not provide otherwise. As other circuits have noted, the quoted footnote in *Lane* is mere dicta.[41] The Supreme Court has interpreted AEDPA's phrase "clearly established Federal law, as determined by the Supreme Court of the United States" to specifically refer to the holdings of cases, and not to dicta.[42] No constitutional issue was before the Court in Lane; that case dealt with the standards of joinder under

---

[36] R. Doc. 18 at 20.
[37] 474 U.S. at 446 n.8.
[38] 506 U.S. 534 (1993).
[39] *Id.* at 539.
[40] *Id.* at 538.
[41] *See Collins v. Runnels*, 603 F.3d 1127, 1132 (9th Cir. 2010) (The footnote upon which Collins relies did not set forth the governing legal principle in *Lane.* It was merely a comment.").
[42] *Williams v. Taylor*, 529 U.S. 362, 412 (2003).

Federal Rules of Criminal Procedure 8 and 52. The footnote on which Petitioner relies does not constitute "governing law," and so it is insufficient to bring a claim for habeas relief under AEDPA.[43]

Nor does *Zafiro* provide the support that Petitioner suggests. Petitioner argues that *Zafiro* "recognized the role of Fed. R. Crim. P. 14 in safeguarding constitutional rights from the burden of joinder."[44] As in *Lane*, however, the Court was not explicating constitutional requirements, but only interpreting the Federal Rules of Criminal Procedure. Accordingly, it is not binding on state courts.[45] This Court agrees with the reasoning of the Sixth Circuit, which found, "*Zafiro* thus has no precedential weight in reviewing state court proceedings on due process grounds."[46]

Even if *Zafiro* and *Lane* created "clearly established Federal law" sufficient for relief under AEDPA, Petitioner has not shown that the alleged defects of his trial cross that line. Significantly, the *Zafiro* Court expressly stated that mutually antagonistic defenses were not *per se* prejudicial.[47] Moreover, the Court's examples of when a risk of prejudice may be present do not apply here. The Court elaborated:

> Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant is was guilty . . . Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial.[48]

---

[43] *Nelson v. Quarterman*, 472 F.3d 287, 292 (5th Cir. 2006)
[44] R. Doc. 21 at 2.
[45] *See Collins*, 603 F.3d at 1132.
[46] *Phillips v. Million*, 374 F.3d 395 (6th Cir. 2004).
[47] *Zafiro*, 506 U.S. at 538
[48] *Id.* at 539.

These situations all describe evidentiary or technical loopholes that co-defendants may be able to manipulate in a joint trial that would not exist in separate trials. Petitioner, however, does not allege such a situation. Rather, the thrust of his argument is that a joint trial put him at a disadvantage because both the prosecutor and co-defendant's counsel sought to undermine his defense.[49] Petitioner argues that his co-defendant's counsel took the opportunity in opening and closing statements to attack him.[50] Petitioner also argues that because his co-defendant's counsel was able to asking leading questions of prosecution witnesses, his ability to discredit the Petitioner was "sharper than the prosecutor's."[51] Unlike the examples in *Zafiro*, Petitioner has not shown that any essential exculpatory evidence was not available in the joint trial, or that evidence that would be inadmissible in a separate trial was introduced in his joint trial. His claims simply describe the reality of cross-examination when co-defendants present mutually antagonistic defenses. Such claims do not rise to constitutional violations. As the Supreme Court's admonished, "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials."[52]

The Court concludes that the state court's determination that joinder of the co-defendants did not deny Petitioner due process or a fair trial is neither contrary to, nor an unreasonable application of federal law as clearly established by the Supreme Court.

C.  <u>Witness Testimony</u>

Petitioner objects to the Magistrate Judge's statement that "witness testimony suggest[ed] there were at least two shooters involved."[53] Petitioner asserts that detective

---

[49] R. Doc. 21 at 3-4.
[50] R. Doc. 21 at 4.
[51] *Id.* at. 6.
[52] *Zafiro*, 506 U.S.
[53] R. Doc. 21 at 3 (quoting R. Doc. 18 at 24).

8

Abraham Andino of the Jefferson Parish Sheriff's Office testified that none of the numerous eyewitnesses he interviewed told him that Petitioner had a gun on the night in question. Further, Plaintiff notes that the only evidence that Petitioner was one of the shooters was Petitioner's own confession.[54]

The Magistrate Judge's description of the evidence is accurate. "The evidence consisted of an eyewitness who positively identified Holmes as the shooter and a detailed, lengthy confession by Duckett to police that he shot the victim, as well as ballistics evidence that coincided with witness testimony suggesting there were at least two shooters involved." Contrary to the Petitioner's assertions, the Magistrate Judge did not suggest that witness testimony implicated the Petitioner directly, only that there was witness testimony "suggesting there were at least two shooters involved." This is consistent with the trial testimony as summarized by the Louisiana Fifth Circuit of Appeal.[55]

D.     Jury Instructions

Lastly, Petitioner objects to the Report and Recommendations to the extent that the Magistrate Judge determined that the jury instructions cured whatever prejudice may have existed.[56] Petitioner points out that the standard jury instructions were used at trial, which did nothing to mitigate the prejudice from co-defendant counsel's aggressive cross-examination.[57]

However, Petitioner misstates the conclusions of the Magistrate Judge. The Report and Recommendations does not suggest that the jury instructions used at trial entirely

---

[54] R. Doc. 21 at 3.
[55] R. Doc. 18 at 7 (quoting State Rec., Vol. 3 of 9, *State v. Duckett*, 119 So. 3d at 170-75).
[56] R. Doc. 21 at 12.
[57] *Id.* at 13.

cured the risk of prejudice; rather, the Magistrate Judge noted that by instructing the jury to consider only the evidence at trial and not counsel's opening and closing statements[58], the jury instruction "certainly impact[ed] the alleged prejudicial effect of opening and closing statements, two of three components of trial underlying Duckett's claim that he was denied a fair trial."[59] Trial courts have the discretion to craft "less drastic measures, such as limiting instructions" when a risk of prejudice from mutually antagonistic defenses may exist.[60] Jurors are presumed to follow the jury instructions provided by the court.[61] Accordingly, the Magistrate Judge was correct to note that the jury instructions provided by the state trial court diminished whatever risk of prejudice may have existed.

## CONCLUSION

For the reasons above, the Court approves the Magistrate Judge's Report and Recommendations[62] and adopts it as its opinion in this matter. Accordingly;

**IT IS ORDERED** that the petition of Darius Duckett for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 is hereby **DISMISSED WITH PREJUDICE**.

**New Orleans, Louisiana, this 4th day of December, 2017.**

*Susie Morgan*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[58] There is no dispute that no special limiting instructions were requested, and that the trial court used standard jury instructions.
[59] R. Doc. 18 at 25.
[60] *Zafiro*, 506 U.S. at 539.
[61] *Richardson v. Marsh*, 481 U.S. 200, 211 (1987).
[62] R. Doc. 18.